JACKSON *v.* SUTTON.

4-9252                                          231 S. W. 2d 93

Opinion delivered July 3, 1950.

*W. J. Cotton,* for appellant.

*M. A. Hathcoat,* for appellee.

MINOR W. MILLWEE, Justice. Appellees, Carl G. Sutton and wife, were the owners of a 63-acre farm in Boone County, Arkansas, on February 3, 1947, when they entered into an "Escrow Contract" for the sale and conveyance thereof to appellants, J. F. Jackson and wife, Effie Jackson. The contract required a cash payment of $1,200 on the purchase price of $3,800 with the balance payable $300 a year beginning January 20, 1948, until the last payment of $200. The deferred payments bore

interest at the rate of six per cent and were evidenced by nine notes payable as provided in the contract.

The contract further provided that a copy thereof, together with a warranty deed and abstract of title, should be placed in escrow and delivered to appellants upon full payment of the purchase price; that appellants were to pay future taxes and keep the property insured; and that, upon default in the payments stipulated in the contract, the escrow agent should return the deed and abstract to appellees and appellants should surrender possession of the property, all moneys collected under the contract to be retained as rent and liquidated damages.

Appellees filed this suit on May 25, 1949, alleging that appellants had defaulted in performance of the contract by failing to make payments of the annual installments, taxes and insurance. A copy of the contract was attached as an exhibit to the complaint which asked for a cancellation of the contract and deed placed in escrow and for possession of the property.

In their answer and cross-complaint appellants admitted the execution of a contract in which they agreed to make the payments as alleged by appellees, but denied that the contract sued upon was the one signed by them. Appellants asserted that the contract as actually executed had been altered or substituted to eliminate certain provisions; that the agent of appellees had made false representations as to acreage and fences; that appellees had failed to finish a house under construction on the property as required by the contract actually executed; and that appellants had breached the contract by refusing to comply with such provisions.

After thorough consideration and analysis of the testimony which was taken in the form of depositions, the chancellor held that appellants had failed to discharge the burden of showing a fraudulent substitution or alteration of the contract; that the agent of appellees made no false or fraudulent representations in the sale of the land, and that appellants had defaulted in the contract payments. However, the court gave appellants the

right to elect whether they should pay delinquent installments, taxes and insurance and thereby continue the contract in force or whether they would forfeit the contract. Appellants' request for a week within which to make an election was granted. At the expiration of such period, appellants announced in open court that they declined to make the delinquent payments and continue the contract. A decree was accordingly entered dismissing appellant's cross-complaint, ordering cancellation and forfeiture of the contract, and directing return of title papers held by the escrow agent and delivery of possession of the lands to appellees within 60 days.

Appellants contend that the chancellor's findings, that the contract sued upon had not been fraudulently substituted, or altered, and that no false representations had been made by appellees' agent, are against the greater weight of the testimony. We cannot agree with this contention.

Appellees, who reside in Amarillo, Texas, listed the lands for sale with D. C. Overturff, a real estate agent at Green Forest, Arkansas. Appellants, who came to Boone County from Texas, approached Overturff, inspected the property and made an offer to purchase which appellees accepted by wire. Overturff had an attorney prepare the two-page typewritten contract in triplicate. After appellants signed the contract, it was mailed to appellee, Carl G. Sutton. Appellees then signed the contract, retained the original, deposited one copy with the escrow agent, along with a warranty deed and abstract of title, and returned the other copy to Overturff who delivered it to appellants. The original and a photostatic copy of the carbon copy left with the bank were introduced in evidence by appellees.

As originally drafted the contract designated the First National Bank of Green Forest, Arkansas, as escrow agent. Appellee, Carl G. Sutton, changed the contract by substituting the Amarillo National Bank of Amarillo, Texas, as escrow agent. The testimony is conflicting as to whether this change was made prior to consummation of the sale agreement, but the preponderance

of the evidence shows that appellants acquiesced in the change and made payments in the amount of $356 on the contract without objection thereto.

In September, 1947, appellants entered into a contract with Sam Thomas to exchange the 63-acre farm and certain personal property for 400 acres of land in Colorado. Pursuant to this agreement, appellants transferred their copy of the contract involved in this suit to Thomas. It developed that Thomas did not own the lands which he agreed to convey to appellants. He absconded with appellants' personal property and attempted to convey the lands here involved to Merritt Finley of Malvern, Arkansas, while appellant, J. F. Jackson, was in Colorado investigating title to the 400 acre tract. Appellants did not introduce their copy of the contract with appellees and Mrs. Jackson testified that it was in Finley's possession the last time she saw it.

Appellants testified that the contract signed by them provided that a house under construction on the premises was to be finished at the expense of appellees, and that the land was to be enclosed on the north and west sides by a wire fence. Appellants' son, Mrs. Jackson's mother, and two neighbors who lived on adjoining premises testified that they read the contract soon after its execution and corroborated the testimony of appellants as to its contents. Some of these witnesses stated that the contract consisted of three typewritten pages. J. F. Jackson stated that the provisions relative to finishing the house and fencing the lands started near the bottom of the first page of the contract. Most of this testimony was in response to questions that were very leading. The chancellor thought it unlikely that most of these witnesses would remember the exact terms of a written contract casually read by them many months before they gave their testimony. In short, the court did not consider such testimony very convincing, and neither do we.

Although appellants denied that the contract introduced by appellees was the contract actually entered into, neither of them denied their signatures thereto. The witnesses for appellees denied that there was any alteration

of the contract except the change as to the escrow agent, which they assert was made with the express consent of appellants, and the contract itself supports this conclusion. They also testified that appellants made no complaint about the matter of completion of the house, the acreage and the building of fences until after this suit was brought.

Appellants also argue that D. C. Overturff, who also handled the trade between appellants and Sam Thomas, fraudulently colluded with the latter in order to cause appellants to surrender their copy of the contract to Thomas. This contention is not supported by the evidence.

The issues are purely factual and the chancellor's findings are fully supported by the greater weight of the evidence.

Affirmed.